# Commonwealth *v.* Quiggle, Appellant.

*Criminal law—Unlawful cutting of timber—Evidence.*

On the trial of an indictment for the illegal cutting of timber, under the Act of March 29, 1824, P. L. 152, where the case turns upon the position of a boundary line, it is proper to admit testimony that two surveyors, by direction of the owners of two adjoining tracts of land some years prior to the trial, distinctly marked upon the ground the line between the tracts, with regard to the location of which there had previously been litigation, and that the parties had thereafter recognized the line so marked, as the limit of their respective possessions.

On the trial of an indictment for the illegal cutting of timber on the land of another, where the fact is undisputed that the land belonged to a coal company, and the testimony of the prisoner to the effect that he had been misinformed as to the boundary lines by his own vendor, is directly contradicted by the latter, the question whether the prisoner cut the timber under a bona fide claim of right, is a question of fact for the jury.

Argued Oct. 30, 1901.  Appeal, No. 209, Oct. T., 1901, by defendant, from judgment of Q. S. Centre Co., Nov. T., 1900, No. 29, on verdict of guilty in case of Commonwealth v. Jacob Quiggle.  Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.  Affirmed.

Indictment for the illegal cutting of timber on the land of another.  Before LOVE, P. J.

At the trial it appeared that the defendant was indicted for cutting timber illegally upon lands owned by the Lehigh Valley Coal Company.  The defendant claimed that one Samuel Marsh from whom the defendant bought other land represented that the land referred to in the indictment was included in the lands bought by the defendant.  Marsh denied that he made any such statement.

The court charged in part as follows:

[This question is first to be largely determined by what was this line that is spoken of here as the red line.  I think it was said to have been marked about 1892.  It is alleged on the part of the commonwealth that about that year there was a settlement of a dispute as between the London tract on the south and the Stewart and Charles Risk on the north.  There were

two or three other surveys there in the names, I think, of Thomas Grant and Rush, their northern tier of that block of surveys. Between them and the block lying immediately north there was an interference and controversy, and that as the result of that controversy it is contended that there was a division line agreed upon and that that line was run in 1892 and well marked.

Now it would have been more satisfactory, perhaps, if the terms of that agreement directing the courses and distances of that line had been adduced in court; but Mr. Marstellar testifies that he and Mr. Mitchell, in pursuance of that agreement, ran and marked that line.

The first thing then for you to determine is whether or not there was a consentable line adopted between these adjoining owners, settling the dispute between those tracks where there was an interference, and whether it was a well marked and defined line between them. If you are satisfied beyond a reasonable doubt of that fact, then we say to you, gentlemen of the jury, that all persons who are parties or privies to the title in which that consentable line was established to determine their rights, would be bound by it.

It is alleged that it was between N. Shaw & Company and the Lehigh Valley Coal Company that that settlement was made and the line fixed. Then if they owned the tracks, the one on the north and the other on the south of that consentable line, that would determine their rights to that disputed territory, and any person who subsequently purchased from either of them would be bound by that consentable line, because they would be privy to it.

Now, gentlemen of the jury, if you are satisfied from the evidence in this case that there was a consentable line run along there in 1892, which was well marked and easily observable, that would fix the rights, not only of the parties owning those tracts at that time, but the rights of parties who went there under the title of either of those parties to these tracts of land. That would be their division line, and any person who would knowingly cut timber over that line would be liable under this act of assembly.] [2]

Then the next question you are to determine is, What claim do the defendants have to those lands? The agreement as

shown here does not fix very definitely the boundaries. You heard the testimony of the commonwealth's witnesses—Mr. Marstellar, Mr. Marsh and some others—as to that line. You heard also the testimony of some of the witnesses as to the marks they had seen being somewhat dim.

Now while the agreement does not define that line very clearly, or what territory is embraced within its scope, yet the defendant alleges that he purchased this timber from Mr. Marsh under this agreement; that Mr. Marsh at one time stood there somewheres on the Richard Morris, I think, and pointed out in a general way the timber he claimed to own, but that there were no lines pointed out to him definitely. It is conceded that this consentable line was not pointed out to him and that he did not go very definitely over the lines embraced in that agreement so as to know their limit.

[Now, we say to you, gentlemen of the jury, that where a man purchases land if he comes on to a well defined line which may be outside of his borders, he ought to know to some extent where his land lies and where his lines are, before he goes over that line. But if he crosses a well defined line, one which is well marked, and he does it knowingly, and he has no title to the lands beyond that line, and he cuts the timber there, then we say to you that that would be such knowledge as would make him liable under this act of assembly.] [3]

We have been requested by counsel for the defendants to instruct you as follows :

Defendants' counsel, at the close of the testimony in this case, respectfully request the court to instruct the jury that there can be no conviction under the evidence in this case; that the issue raised under the evidence is an issue involving title to land claimed by the prosecutor and denied by the defendants, and claimed by the defendants, and that the evidence on the part of the commonwealth, as well as on the part of the defendants, show that the defendants cut the timber in question under a claim of right. *Answer :* We cannot affirm that proposition as stated. A claim of right must be one that is based upon some evidence of title or right, and that question is one we have gone over and submitted to you. The only claim defendants have shown has been this article of agreement and a general allegation that certain territory was pointed

out, but no lines defining that territory so pointed out. The simple fact that a man may stand at a certain place and point to all the country round about, and say that all that timber was his, would not be such a representation or such a claim as is contemplated where there is a real controversy as to the cutting of timber under a claim of right. [4]

Verdict of guilty upon which judgment of sentence was passed that the defendant pay a fine of $125 and the costs of the prosecution. Defendant appealed.

*Errors assigned* were (1) the admission of evidence referred to in the opinion of the Superior Court. (2–3) Above instructions, quoting them.

*A. O. Furst,* for appellant.

*Ellis I. Orvis,* with him *N. B. Spangler,* district attorney, and *Calvin M. Bower,* for appellees.

Opinion by W. D. Porter, J., February 14, 1902:

The testimony admitted under the exception, which is the foundation of the first assignment of error, was not in any sense an attempt to prove by parol the contents of the written agreement; not a covenant or condition of the agreement was referred to by the witness. The testimony, if believed, established that two surveyors, Marstellar and Mitchell, by direction of the owners of two adjoining tracts of land, in 1892, distinctly marked upon the ground the line between the tracts, with regard to the location of which there had previously been litigation, and that the parties had from that date to the present time recognized the line so marked as the limit of their respective possessions. That the evidence was admissible to show the actual condition of affairs upon the ground and the location of the line as recognized by the parties is too clear to require citation of authority. The evidence established beyond any controversy that the consentable line had been distinctly marked upon the ground, and that the parties on each side had recognized it as the boundary, and continued to do so at the time of the trial of this cause. Marsh, under whom the defendant pretended to claim, testified that when he bought from Shaw & Company, who had been

parties to the marking of the consentable line, he bought only to that line which was distinctly called to his attention.

The language in that part of the charge of the court covered by the second and third assignments of error is to be considered in connection with the undisputed facts in the case, and the evidence bearing upon the facts which were controverted. There was not a scintilla of evidence tending to show that the appellant had any title to or right in the timber for cutting which, he was indicted. The fact was undisputed, under the evidence, that the ownership and possession of the land and timber were in the Lehigh Valley Coal Company. The article of agreement between Marsh and the appellant, under which the latter acquired his rights, conferred no title to any timber north of the Biebleheimer line, which was parallel to but seventy rods south of the consentable line to which the language of the learned judge referred. The court below would have been justified in saying to the jury that the appellant had no actual right to cut timber within seventy rods of the consentable line. The guilt of the defendant was not, however, dependent upon his legal rights but upon his honest and reasonable belief as to the location of the land described in his written agreement. The appellant attempted to satisfy the jury of his honest but mistaken belief of his ownership of the timber in question, and testified that at a date long prior to the execution of the agreement with Marsh he had entered into negotiations with the latter for the purchase of the timber upon the land, that he and Marsh had gone to a point somewhere in that region but a long distance from the land now in question, and that Marsh had then in general terms represented that he owned all the timber in that part of the country, but did not point out any line or boundary, which terms the defendant testified covered the tract upon which he afterwards trespassed, but at that time they failed to come to any agreement with regard to the sale of the timber and the negotiations were suspended; that after the lapse of a considerable time he bought of Marsh, the timber upon the land described in the written agreement, and that Marsh then represented that this included all the timber which he, Marsh, owned in that part of the country, and that he, the appellant, believed this to include the timber now in question. Marsh testified that no such representations were made, that he never had title to the

land, for cutting timber upon which, the defendant was indicted, and that he pointed out upon the ground to Quiggle, the Biebleheimer line, which marked the northern boundary of the land described in the written agreement.    Here was an issue of fact squarely raised, if the jury believed Marsh, then the testimony of the appellant was untrue, and he had no grounds whatever for believing that he had any right to cut the timber in question. The learned judge of the court below submitted this question to the jury in language of which the appellant certainly has no ground for complaint.

There being no question under the evidence that the timber in question was the property of the Lehigh Valley Coal Company, whether the appellant cut it under a bona fide claim of right, was a question of fact for the jury, it would have been error for the learned court below to pass upon it as a question of law.    The point submitted by the defendants might properly have been distinctly negatived, but the qualification which the court added to the refusal did the defendants no harm.

The judgment is affirmed and the defendant is ordered to surrender himself to the court below to the end that the sentence be carried into effect.